1  **KAZEROUNI LAW GROUP, APC**
2  Abbas Kazerounian, Esq. (SBN: 249203)
   ak@kazlg.com
3  Andrei Armas, Esq. (SBN: 299703)
   Andrei@kazlg.com
4  245 Fischer Avenue, Suite D1
5  Costa Mesa, CA 92626
   Telephone: (800) 400-6808
6  Facsimile: (800) 520-5523
7
8  **HYDE & SWIGART**
   Joshua B. Swigart, Esq. (SBN: 225557)
9  josh@westcoastlitigation.com
10 2221 Camino Del Rio South, Suite 101
   San Diego, CA 92108
11 Telephone: (619) 233-7770
   Facsimile: (619) 297-1022
12
13 [Other Attorneys on Signature Page]
14
   *Attorneys for Plaintiffs*
15

16            **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
17

18 **ERIC LANKENAU-RAY and**          | **Case No.:** 4:16-cv-2660
   **CARMEN VARGAS,**
19 **Individually And On Behalf Of**    | **CLASS ACTION**
   **All Others Similarly Situated,**
20                                      | **COMPLAINT FOR DAMAGES**
              **Plaintiffs,**           | **AND INJUNCTIVE RELIEF**
21
                 **v.**
22                                      | **JURY TRIAL DEMANDED**
   **MARS, INC.,**
23
              **Defendant.**
24

25

26 //

27 //

28

*Left margin (vertical):* KAZEROUNI LAW GROUP, APC / 245 Fischer Avenue, Suite D1 / Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
245 Fosser Avenue, Suite D1
Costa Mesa, CA 92626

## INTRODUCTION

1.    The average consumer spends a mere 13 seconds making an in-store purchasing decision, or between 10 to 19 seconds for an online purchase.[1]   That decision is heavily dependent on a product's packaging, and particularly the package dimensions:   "Most of our studies show that 75 to 80 percent of consumers don't even bother to look at any label information, no less the net weight . . . . Faced with a large box and a smaller box, both with the same amount of product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2]   This lawsuit charges defendant, Mars, Inc. d/b/a Uncle Ben's (hereinafter "Defendant" and/or "Mars"), with intentionally packaging its Uncle Ben's rice products ("Rice Product/s") in box containers that contain up to 50% empty space.   Consumers, in reliance on the size of the containers, paid a premium price for the products, which they would not have purchased had they known that the containers were substantially empty.

2.    Eric Lankenau-Ray and Carmen Vargas (hereinafter collectively "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the unlawful and deceptive actions of Defendant with respect to the packaging of its Rice Products.   Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

---

[1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-windown.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

[2] http://www.consumerreports.org/cro/magazinearchive/2010/january/shopping/product-packaging/overview/product-packaging-ov.htm (quoting Brian Wansink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers).

---

3.      Defendant's Rice Products sell for varying prices, depending on the type of rice, flavor and size. However, Defendant's Rice Products have been the top-selling rice in the U.S. from 1950 until the 1990s.[3] Defendant's Rice Products are sold throughout the world, including the U.S., online and at various stores, including most grocery stores.

4.      As advertised by Defendant, consumers believe that they are purchasing high-quality products when they buy Defendant's Rice Products, for which they will pay a premium price, because Defendant's Rice Products are made from "a tradition of quality and variety since 1946."[4]

5.      Plaintiffs all purchased Rice Products, and expected to receive a full container of product.   The Rice Products are packaged in non-transparent, paper/cardboard containers, as depicted below.   Plaintiffs were surprised and disappointed when they opened the Rice Products to discover that up to 50% was empty space, or slack-fill.  Had Plaintiffs known about the slack-fill at the time of purchase, they would not have bought Defendant's Products.

6.      Defendant's conduct violates Consumer protection and labeling laws of the states of California and New York, among others.

### JURISDICTION AND VENUE

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act (CAFA) because this is a class action, as defined by 28 U.S.C § 1332(d)(l)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

8.      The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

---

[3] *See http://www.forbes.com/forbes/1999/1213/6414178a.html.* Accessed on April 15, 2016.
[4] *See https://www.unclebens.com/products.* Accessed on April 15, 2016

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite DI
Costa Mesa, CA 92626

9.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

10.     The Court has personal jurisdiction over Defendant because its Rice Products are advertised, marketed, distributed and sold through the State of California; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in the State of California; Defendant is authorized to do business in the State of California; and Defendant has sufficient minimum contacts with the State of California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial activity with the State of California.

11.     Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial district, Defendant has marketed and sold the Rice Products at issue in this action in this judicial district, and it conducts business within this judicial district. In addition, Plaintiff Eric Lankenau-Ray resides in this judicial district.

**PARTIES**

12.     Plaintiff Eric Lankenau-Ray (hereinafter "Plaintiff Ray") is a citizen of the State of California and resides in Oakland, California. Plaintiff Ray purchased a Rice Product for personal consumption during the last four years in Berkeley, California.[5] Plaintiff Ray purchased the Rice Product in reliance on Defendant's packaging in containers made, formed or filled as to be misleading and containing non-functional slack-fill. Had Plaintiff Ray known the truth about Defendant's

_____

[5] Specifically, on or around January 2016, Plaintiff Ray purchased Defendant's "Long Grain & Wild Rice" product from a local grocery store in Oakland, California.

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

misrepresentations, he would not have purchased the premium priced Rice Product.

13.  Plaintiff Carmen Vargas (hereinafter "Plaintiff Vargas") is a citizen of the State of New York.  Plaintiff Vargas purchased several Rice Products for personal consumption during the last four years in the state of New York.[6]  Plaintiff Vargas purchased the Rice Products in reliance on Defendant's packaging in containers made, formed or filled as to be misleading and containing non-functional slack-fill. Had Plaintiff Vargas known the truth about Defendant's misrepresentations, she would not have purchased the premium priced Rice Products.

14.  Defendant Mars, Inc. is a privately owned corporation, incorporated in the state of Delaware and with its headquarters in McLean, Virginia.  Defendant's Rice Products are among the top selling rice products in the world, including the U.S. Defendant's sells its Rice Products through various local grocery stores, markets and online retailers.

**FACTUAL ALLEGATIONS**

**FEDERAL AND STATE LAWS PROHIBIT NON-FUNCTIONAL SLACK FULL**

15.  Food manufacturers are required to comply with federal and state laws and regulations that govern the labeling and packaging of their products.

16.  The Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq*., governs the sale of foods, drugs and cosmetics in the United States.  The classification of a product as a food, drug, or cosmetic affects the regulations by which the manufacturer must abide.  In general, a product is characterized according to its intended use, which may be established, among other ways, by: (a) claims stated on the product's labeling, in advertising, on the Internet, or in other promotional materials; (b) consumer perception established through the product's

---

[6] Specifically, on or around October 2015, Plaintiff Vargas purchased Defendant's "Original" and "Whole Grain" product from a local grocery store in Stony Point, New York.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

reputation, for example by asking why the consumer is buying it and what the consumer expects it to do; or (c) the inclusion of ingredients well-known to have therapeutic use, for example, fluoride in toothpaste.

17.     As explained below, Defendant's Rice Products are characterized and understood by consumers to be food.

18.     Under the FDCA, the term "false" has its usual meaning of untruthful, while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the labeling is misleading, the entire product is misbranded.  No other statement in the labeling cures a misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951).  Under the FDCA, it is not necessary to prove that anyone was actually misled.

### Misbranding of Foods

19.     The Rice Products are characterized by Defendant as a food, as they are all labeled and advertised as varying types and flavors of rice.   For example, Defendant's Uncle Ben's website has a total of 6 rice categories.[7] These categories include: (1) White Rice, (2) Brown Rice, (3) Flavored Grains (i.e., flavored rice), (4) Country Inn Rice, (5) Ready Rice And (6) Dry Specialty Rice.[8]

20.     Under the Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(d), a food shall be deemed to be misbranded if "(a) . . . (1) its labeling is false or misleading in any particular"; or "(d) If its container is so made, formed, or filled as to be misleading."

21.     Pursuant to 21 C.F.R. §100.100, a food is misbranded if "its container is so made, formed or filled as to be misleading."  In addition, "(a) A container that does

---

[7] *See, https://www.unclebens.com/products.* Accessed on April 15, 2016.
[8] *Id.*

not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill.  Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.  Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package . . . ."

22.    None of the above safe-harbor provisions applies to Defendant's Rice Products.  Defendant intentionally incorporated non-functional slack-fill in its packaging of the Rice Products in order to mislead the consumers, including Plaintiffs and members of the Class. *Waldman v. New Chapter, Inc.,* 714 F. Supp. 2d 398, 405 (E.D.N.Y. 2010) ("Misleading consumers is not a valid reason to package a product with slack-fill.  *See* 21 C.F.R. § 100.100(a)(1-6).").

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

23.     Consumer protection and food labeling laws of the states of California and New York impose requirements that mirror the federal law.  California Business & Professions Code states, "[n]o container shall be made, formed, or filled as to be misleading" and  "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill."  *See* Cal. Bus. & Prof. Code § 12606 (incorporating the safe harbor provisions of the CFR); *see also* Cal. Health and Safety Code § 110690 ("Any food is misbranded if its container is so made, formed, or filled as to be misleading.").  Similarly, New York law finds that "[f]ood shall be deemed to be misbranded . . . . [i]f its container is so made, formed, colored or filled as to be misleading." *See* NY AGM Law § 201.

**Defendant's Products Contain Non Functional Slack-Fill**

24.     Defendant's Rice Products are sold in varying non-transparent containers that contain different net weights.  Each of the containers has significant slack-fill.

25.     For example, Defendant's "Long Grain & Wild Rice" products are placed in containers that are 7 inches tall, but contain 4.5 inches of slack fill. Thus, approximately 50% of the interior of the container is comprised of empty space, or non-functional slack fill.  *See* PHOTO A.

//
//
//
//
//
//
//
//
//
//

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

//

PHOTO A



//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

26.    Defendant's "Country Inn" rice products are also placed in containers that are 7 inches tall, but contain 4.25 inches of slack fill. Thus, approximately 50% of the interior of the container is comprised of empty space, or non-functional slack fill.  *See* PHOTO B.

PHOTO B



27.     Similarly, all of Defendant's Rice Products contain some level of non-functional slack fill. As demonstrated above, this non-functional slack fill can compromise approximately 50% of the interior of the container.

28.     Judging from the sizes of the containers, a reasonable consumer would expect them to be substantially filled with product.  Consumers are misled into believing that they are purchasing substantially more Rice Products than they receive.

29.     Moreover, although the container labels state the amount of Rice Product contained therein, the measurements vary between pounds, ounces, and grams, and consumers are not able to determine whether the containers are substantially filled. Furthermore, because the containers are non-transparent and consumers cannot see inside of them, they are unable to determine the amount of product contained therein prior to opening the containers.  A reasonable consumer would believe that the Rice Products are substantially filled.  *See Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010) (finding that a half-filled supplement package could constitute a "misleading representation" that resulted in the unjust enrichment of the manufacturer even though the weight of the product and the number of servings enclosed were clearly listed on the outer packaging).

30.     There is no functional reason for including up to 50% slack-fill in the Rice Products.

31.     On information and belief, consumers have relied upon, and are continuing to rely upon, the size of the Rice Products containers as the basis for making purchasing decisions.  Consumers believe that the Rice Products are substantially full because they cannot see the actual contents of the non-transparent container.

32.     On information and belief, Defendant is selling and will continue to sell the Rice Products using these blatantly deceptive and misleading slack-filled containers.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626

33.     Defendant's packaging and advertising of the Rice Products violates various state laws against misbranding, which contain requirements that mirror the FDCA, as described herein.

**Plaintiffs Relied on Defendant's Misleading and Deceptive Conduct and Were Injured as a Result**

34.     The types of misrepresentations made, as described herein, were considered by Plaintiffs and Class Members, as would be considered by a reasonable consumer, when deciding to purchase Defendant's Rice Products.   Reasonable consumers, including Plaintiffs and Class Members, attached importance to whether Defendant's Rice Products were misbranded, *i.e.*, not legally salable, or capable of legal possession, and/or contain non-functional slack-fill.

35.     Plaintiffs and Class Members did not know, and had no reason to know, that the Rice Products contained non-functional slack-fill.

36.     Defendant's Rice Product packaging was a material factor in Plaintiffs' and Class Members' decisions to purchase the Rice Products.   Based on Defendant's Rice Products packaging, Plaintiffs and Class Members believed that they were getting more product than was actually being sold.   Had Plaintiffs known Defendant's packaging was slack-filled, they would not have bought the slack-filled Rice Products.

37.     Plaintiffs and Class Members paid the full price of the Rice Products and received less product than they expected due to the non-functional slack-fill in the Rice Products containers.

38.     There is no practical reason for the non-functional slack-fill used to package the Rice Products other than to mislead consumers as to the actual volume of the product being purchased by consumers.

39.     As a result of Defendant's misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Rice Products.  Plaintiffs and the

Class (defined below) have been damaged by Defendant's deceptive and unfair conduct.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following classes (collectively, the "Class" or "Classes"):

National Class: All persons in the United States who made retail purchase of Defendant's Rice Products in containers made, formed or filled as to be misleading and with non-functional slack-fill, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

California Subclass: All California residents who made retail purchase of Defendant's Rice Products in containers made, formed or filled as to be misleading and with non-functional slack-fill, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

New York Subclass: All New York residents who made retail purchase of Defendant's Rice Products in containers made, formed or filled as to be misleading and with non-functional slack-fill, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate

41.     The proposed Classes exclude current and former officers and directors of Defendant, Members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

42.     Plaintiffs reserve the right to revise the Class definitions based on facts learned in the course of litigating this matter.

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

43.   <u>Numerosity</u>: This action has been brought and may properly be maintained as a class action against Defendant under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure.  While the exact number and identities of other Class Members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are hundreds of thousands of Members in the Class.  Based on sales of the Rice Products, it is estimated that each Class is composed of more than 10,000 persons.  Furthermore, even if subclasses need to be created for these consumers, it is estimated that each subclass would have thousands of Members.  The Members of the Class are so numerous that joinder of all Members is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

44.   <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Members of the Class as all Members of the Class are similarly affected by Defendant's wrongful conduct, as detailed herein.

45.   <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of the Members of the Class in that they have no interests antagonistic to those of the other Members of the Class.  Plaintiffs have retained experienced and competent counsel.

46.   <u>Superiority</u>:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages sustained by individual Class Members may be relatively small, the expense and burden of individual litigation make it impracticable for the Members of the Class to individually seek redress for the wrongful conduct alleged herein.  Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein.  There will be no difficulty in the management of this action as a class action.  If Class treatment of these claims were not available, Defendant would likely unfairly receive thousands of dollars or more in improper revenue.

47.   <u>Common Questions Predominate</u>:  Common questions of law and fact exist as to all Members of the Class and predominate over any questions solely affecting individual Members of the Class.  Among the common questions of law and fact applicable to the Class are:

i.      Whether Defendant labeled, packaged, marketed, advertised and/or sold Rice Products to Plaintiffs, and those similarly situated, using false, misleading and/or deceptive packaging and labeling;

ii.     Whether Defendant's actions constitute violations of 21 U.S.C. 352, *et. seq.* and 21 U.S.C. 100.100, *et. seq.*;

iii.    Whether Defendant's actions constitute violations of state consumer protection laws;

iv.     Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of its Rice Products;

v.      Whether Defendant's labeling, packaging, marketing, advertising and/or selling of its Rice Products constituted an unfair, unlawful or fraudulent practice;

vi.     Whether Defendant's packaging of the Rice Products constituted nonfunctional slack-fill;

vii.    Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

vii.    Whether the Members of the Class have sustained damages as a result of Defendant's wrongful conduct;

ix.     The appropriate measure of damages and/or other relief; and

x.      Whether Defendant should be enjoined from continuing its unlawful practices.

48.   The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation.  Plaintiffs know of no

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626

difficulty that will be encountered in the management of this litigation, which would preclude its maintenance as a Class action.

49. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

50. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual Members; and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

51. The prosecution of separate actions by Members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Members of the Class, although certain Class Members are not parties to such actions.

52. Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION
## COUNT I
## VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,
### Cal. Civ. Code § 1750, *et seq.*

53. Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

54. Plaintiffs bring this claim individually and on behalf of the other Members of the California Class for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code 1761(d).

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

55.   Plaintiffs and the Class Members are consumers who purchased the Rice Products for personal, family or household purposes.  Plaintiffs and the Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code 1761(d).  Plaintiffs and the Class Members are not sophisticated experts with independent knowledge of corporate branding, labeling and packaging practices.

56.   Rice Products that Plaintiffs and other the Class Members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code 1761(a).

57.   Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

58.   Defendant violated federal and California law because the Rice Products are packaged in containers made, formed or filled as to be misleading and which contain non-functional slack-fill, and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

59.   California's Consumers Legal Remedies Act, Cal. Civ. Code 1770(a)(5), prohibits "Misrepresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Rice Products have quantities they do not have.

60.   Cal. Civ. Code 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or

KAZEROUNI LAW GROUP, APC
245 Fosc er Avenue, Suite D1
Costa Mesa, CA 92626

fraudulent acts or practices, in that it advertises goods as containing more product than they in fact contain.

61.     Plaintiffs and the Class Members are not sophisticated experts about the corporate branding, labeling and packaging practices.   Plaintiffs and the Class Members acted reasonably when they purchased the Rice Products based on their belief that Defendant's representations were true and lawful.

62.     Plaintiffs and the Class Members suffered injuries caused by Defendant because (a) they would not have purchased the Rice Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein; (b) they paid a price premium for the Rice Products due to Defendant's misrepresentations and deceptive packaging in containers made, formed or filled as to be misleading and containing non-functional slack-fill; and (c) the Rice Products did not have the quantities as promised.

63.     On or about May 2, 2016, prior to filing this Complaint, a CLRA notice letter was served on Defendant, which complies with California Civil Code 1782(a). Plaintiffs sent Defendant, individually and on behalf of the proposed Class, a letter via US Certified, Direct Signature Required, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.

64.     Wherefore, Plaintiffs seeks injunctive relief for these violations of the CLRA.

## COUNT II
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, California Business & Professions Code § 17200, *et seq.*

65.     Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

66.     Plaintiffs bring this claim individually and on behalf of the Members of the proposed Class and Sub-Classes for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

KAZEROUNI LAW GROUP, APC
245 Fosner Avenue, Suite D1
Costa Mesa, CA 92626

67.    The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…"

68.    Defendant violated federal and California law because the Rice Products are packaged in containers made, formed or filled as to be misleading and that contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

### A.  *"Unlawful" Prong*

69.    Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 352 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 301, the CLRA, Cal. Bus. & Prof. Code § 12606, California Health & Safety Code §§ 111330 and 111390, and other applicable law as described herein.

70.    Defendant violated section 12606 of the Business and Professions Code, in that Defendant packaged its Rice Products in non-conforming type containers. Said non-conforming packages contained extra space by volume in the interior of the container.  The extra space provided no benefit to the contents of the packaging and misled consumers.  In addition, Defendant packaged its Rice Products in containers made, formed, or filled as to be misleading to a potential customer as to the actual size and filling of the package with Defendant's Rice Products.

### B.  *"Unfair" Prong*

71.    Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's advertising is of no benefit to consumers.

//

//

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

## C.  *"Fraudulent" Prong*

72.    Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiffs and the Class Members to believe that the Rice Products contained more content than they actually do and that such packaging and labeling practices were lawful, true and not intended to deceive or mislead consumers.

73.    Plaintiffs and the Class Members are not sophisticated experts about the corporate branding, labeling, and packaging practices of the Rice Products. Plaintiffs and the Class Members acted reasonably when they purchased the Rice Products based on their belief that Defendant's representations were true and lawful.

74.    Plaintiffs and the Class Members lost money or property as a result of Defendant's UCL violations because (a) they would not have purchased the Rice Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Rice Products due to Defendant's misrepresentations; and (c) the Rice Products did not have the quantities as represented.

75.    The conduct of Defendant as set forth above demonstrates the necessity for granting injunctive relief restraining such and similar acts of unfair competition pursuant to California Business and Professions Code.   Unless enjoined and restrained by order of the court, Defendant will retain the ability to, and may engage in, said acts of unfair competition, and misleading advertising.  As a result, Plaintiffs are entitled to injunctive and monetary relief.

### COUNT III
### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,
### California Business & Professions Code § 17500, *et seq.*

76.    As a result of Defendant's misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Rice Products.  Plaintiffs and the Class (defined below) have been damaged by Defendant's deceptive and unfair conduct.

77.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

78.    Plaintiffs bring this claim individually and on behalf of the Members of the proposed Class and Sub-Classes for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

79.    Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

80.    Defendant engaged in a scheme of offering misbranded rice products for sale to Plaintiffs and the Class Members by way of packaging the Rice Products in containers made, formed or filled as to be misleading and which contain non-functional slack-fill.  Such practice misrepresented the content and quantity of the misbranded Rice Products.  Defendant's advertisements were made in California and come within the definition of advertising as contained in Bus. & Prof Code §§ 17500, *et seq*. in that the product packaging was intended as inducements to purchase Defendant's Rice Products.    Defendant knew its conduct was unauthorized, inaccurate, and misleading.

81.    Defendant violated federal and California law because the Rice Products are packaged in containers made, formed or filled as to be misleading and which contain non-functional slack-fill and because they are intentionally packaged to prevent the consumer from being able to fully see their contents.

82.    Defendant violated 17500, *et seq*. by misleading Plaintiffs and the Class Members to believe that the Product packaging contains more Product than it in fact contains, as described herein.

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626

83.    Defendant knew or should have known, through the exercise of reasonable care that the Rice Products were and continue to be misbranded, and that its representations about the quantities of the Rice Products were untrue and misleading.

84.    Plaintiffs and the Class Members lost money or property as a result of Defendant's FAL violations because (a) they would not have purchased the Rice Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Rice Products due to Defendant's misrepresentations; and (c) the Rice Products did not have the benefits, or quantities as promised, and as a result the class is entitled to monetary and injunctive relief.

### COUNT IV
### VIOLATION OF NEW YORK DECEPTIVE TRADE PRACTICES ACT
### NEW YORK GENERAL BUSINESS LAW § 349

85.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

86.    Plaintiffs bring this claim individually and on behalf of the Class Members for Defendant's violations of New York's Deceptive Acts or Practices Law, NY GBL § 349.

87.    NY GBL § 349 states that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are … unlawful."

88.    Any person who has been injured by reason of a violation of NY GBL § 349 may bring an action to enjoin such unlawful act or practice, an action to recover actual damages or fifty dollars, whichever is greater, or both.  The court may, in its discretion, increase the award to an amount not to exceed three times the actual damage, up to one thousand dollars, if the conduct was willful or knowing.

89.    It is not necessary to prove justifiable reliance under NY GBL § 349.  *See Koch v. Acker, Merrall & Condit. Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012)

("To the extent that the Appellate Division order imposed a reliance requirement on General Business law 349 . . . claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim.") (internal citations omitted).

90.    Defendant engaged in deceptive acts and practices by offering misbranded Rice Products for sale in trade or commerce to Plaintiffs and the Class Members by way of packaging the Rice Products in containers made, formed or filled as to be misleading and which contain non-functional slack-fill.  Such practices were in violation of NY GBL § 349 and 21 C.F.R. 100.100.

91.    Defendant violated federal and New York law because the Rice Products are packaged in containers made, formed or filled as to be misleading and which contain non-functional slack-fill and because they are intentionally packaged to prevent consumers from being able to fully see their contents.

92.    The foregoing deceptive acts and practices were directed at consumers.

93.    Plaintiffs and the Class Members lost money or property as a result of Defendant's violations of NY GBL § 349 because (a) they would not have purchased the Rice Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Rice Products due to Defendant's misrepresentations; and (c) the Rice Products did not have the benefits, or quantities as promised, and as a result the class is entitled to monetary and injunctive relief.

## COUNT V
## NEGLIGENT MISREPRESENTATION

94.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein, and further allege as follows:

95.    Defendant, directly or through its agents and employees, made false representations, concealments and non disclosures to Plaintiffs and Members of the Class.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626

96.     Defendant as the manufacturer, packager, labeler and initial seller of the Rice Products purchased by Plaintiffs and Class Members had a duty to disclose the true quantity of the Rice Products and to refrain from selling them in containers made, formed or filled as to be misleading and which contain non-functional slack-fill.  Defendant had exclusive knowledge of material facts not known or reasonably accessible to Plaintiffs and Class Members; Defendant actively concealed material facts from Plaintiffs and Class Members and Defendant made partial representations that are misleading because some other material fact has not been disclosed.  Defendant's failure to disclose the information it had a duty to disclose constitutes material misrepresentations and materially misleading omissions which misled Plaintiffs and Class Members, who relied on Defendant in this regard to disclose all material facts accurately, truthfully and fully.

97.     Plaintiffs and Members of the Class reasonably relied on Defendant's representation that the Rice Products contain more product than actually packaged.

98.     In making the representations of fact to Plaintiffs and Members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above.  The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

99.     Defendant, in making the misrepresentations and omissions, and in engaging in the acts alleged above, knew or reasonably should have known that the representations were not true.     Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and Members of the Class.

100.    As the manufacturer of its Rice Products, Defendant is in the unique position of being able to provide accurate information about those Rice Products.  Therefore there is a special and privity-like relationship between Defendant and Plaintiffs and other consumers.

101.    Defendant has a duty to correct the misinformation it disseminated through its advertising of the Rice Products.  By not informing Plaintiffs and Members of

the Class, Defendant breached its duty. Defendant also gained financially from and as a result of this breach.

102.   By and through such deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiffs and Members of the Class to alter their position to their detriment. Plaintiffs and Members of the Class relied upon these false representations when purchasing Rice Products in over sized containers, which reliance was justified and reasonably foreseeable.

103.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and Members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Rice Products, and any interest that would have been accrued on all those monies, all in an amount to be determined according to proof at time of trial.

104.   Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and Members of the Class.

105.   Plaintiffs and Members of the Class are entitled to relief in an amount to be proven at trial, and injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

(A) For an Order certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiffs as class representatives, and designating Plaintiffs' counsel as counsel for the Class;

(B) For an Order certifying the California Subclass, appointing Plaintiffs Ray representative of the California Subclass, and designating his counsel as counsel for the California Subclass;

(C) For an Order certifying the New York Subclass, appointing Plaintiff Vargas representative of the New York Subclass, and designating her counsel as counsel for the New York Subclass;

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

(D) For an Order declaring that Defendant's conduct violated the CLRA, Cal. Civ. Code § 1750, *et seq.*, and awarding (i) injunctive relief, (ii) costs of suit, and (iii) reasonable attorneys' fees;

(E) For an Order declaring that Defendant's conduct violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, and awarding (i) injunctive relief, (ii) actual damages, (iii) prejudgment and post judgment interest, (iv) exemplary and/or punitive damages pursuant to Cal. Civ. Code § 3294, (v) costs of suit, and (iv) reasonable attorneys' fees pursuant to, *inter alia*, Cal. Code of Civ. Proc § 1021.5;

(F) For an Order declaring that Defendant's conduct violated New York Gen Bus Law § 349, and awarding (i) injunctive relief, (ii) actual damages and statutory damages (i.e., $50 per GBL 349), (iii) prejudgment and post judgment interest, and (iv) reasonable attorneys' fees;

(G) For an Order finding that Defendant made Negligent Misrepresentations, and awarding special, general, and compensatory damages to Plaintiffs and the Class;

(H) For compensatory damages in amounts to be determined by the Court and/or jury;   For prejudgment interest on all amounts awarded;

(I) For an order of restitution and all other forms of equitable monetary relief, as pleaded;

(J) For injunctive relief as pleaded or as the Court may deem proper;

(K) For an Order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit as pleaded; and

(L) For such other and further relief as the Court deems just and proper.

//

//

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite DI
Costa Mesa, CA 92626

**DEMAND FOR TRIAL BY JURY**

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a jury trial on all claims so triable.

Dated: May 16, 2016                                Respectfully submitted,

                                                    **KAZEROUNI LAW GROUP, APC**

                                                    By:  __/s/ Abbas Kazerounian
                                                        Abbas Kazerounian
                                                        ATTORNEY FOR PLAINTIFFS

**GOTTLIEB & ASSOCIATES**
Jeffrey M. Gottlieb, Esq. (JG-7905)
Dana L. Gottlieb, Esq. (DG-6151)
Pro hac vice to be filed
150 East 18th Street
Suite PHR
New York, NY 10003
NYJG@aol.com
danalgottlieb@aol.com
Telephone: (212) 228-9795
Facsimile: (212) 982-6284

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAZEROUNI LAW GROUP, APC
245 Foster Avenue, Suite D1
Costa Mesa, CA 92626

PROOF OF SERVICE