Mara W. Murphy (State Bar No. 185902)
David A. Forkner (*pro hac vice*)
Eli S. Schlam (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Fax: (202) 434-5029
E-mail: mmurphy@wc.com
E-mail: dforkner@wc.com
E-mail: eschlam@wc.com

Jeffrey E. Faucette (State Bar No. 193066)
SKAGGS FAUCETTE LLP
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Telephone: (415) 315-1669
Facsimile: (415) 433-5994
E-mail: jeff@skaggsfaucette.com

*Attorneys for Defendant Mars, Incorporated*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ERIC LANKENAU-RAY and CARMEN VARGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARS, INC.,<br><br>Defendant. | **Case No.:  4:16-cv-2660-YGR**<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  October 18, 2016<br>Time:  2:00 p.m.<br>Place:  Courtroom 1, 4th Floor<br>Judge:  Hon. Gonzalez Rogers |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

NOTICE OF MOTION AND MOTION TO DISMISS ................................................. vii

STATEMENT OF ISSUES TO BE DECIDED ........................................................... viii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

INTRODUCTION .............................................................................................................1

BACKGROUND ...............................................................................................................1

    A.    The 43 Different Varieties of Uncle Ben's® Rice .....................................2

    B.    The Diverse Packaging of the 43 Varieties of Uncle Ben's® Rice. ..........4

    C.    Plaintiffs' Far-Ranging and Wholly-Conclusory Challenge to the Diverse Packaging of the 43 Varieties of Uncle Ben's® Rice .................................5

STANDARD OF REVIEW ...............................................................................................7

ARGUMENT .....................................................................................................................7

I.    Plaintiffs Fail To State a Claim (Counts I–V). ....................................................7

    A.    Functional vs. Non-Functional Slack-Fill .................................................8

    B.    Plaintiffs Do Not Adequately Plead Violations of Slack-Fill Regulations ............10

        1.    Plaintiffs' Allegations Are Impermissibly Conclusory .............10

        2.    Plaintiffs' Conclusory Allegations Are Facially Implausible ....................11

II.    Plaintiffs Lack Standing To Sue for 40 Varieties of Uncle Ben's® Rice They Did Not Purchase (Counts I–V) ..................................................................13

III.    Plaintiffs Lack Standing To Request Injunctive Relief (Counts I–V). ..............15

IV.    Plaintiffs Cannot Maintain a Claim for Negligent Misrepresentation (Count V) ..............17

    A.    Plaintiffs Fail To State a Negligent Misrepresentation Claim under California Law. ..............17

    B.    Plaintiffs Fail To State a Negligent Misrepresentation Claim under New York Law ..............18

V.    Plaintiffs Cannot Apply Consumer Protection Laws Extraterritorially (Counts I–IV). ......19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A.    Plaintiffs Cannot Enforce California Laws Outside of California (Counts I, II, & III). ...............................................................................19

B.    Plaintiffs Cannot Enforce New York Law Outside New York (Count IV). ...........20

CONCLUSION..............................................................................................................................21

MOTION TO DISMISS, NOTICE OF MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

Page

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566 (2d Cir. 2005)
(per curiam)........................................................................................................18

*Am. Protein Corp. v. AB Volvo*, 844 F.2d 56 (2d Cir. 1988)................................18, 19

*Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000 (N.D. Cal. 2012) ........................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................7, 10, 11, 12

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005) ................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................7

*Bird v. First Alert, Inc.*, No. C 14-3585 PJH, 2014 WL 7248734 (N.D. Cal.
Dec. 19, 2014)....................................................................................................16

*Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881 (N.D. Cal. 2012)..................13

*Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044JSW, 2011 WL
159380 (N.D. Cal. Jan. 10, 2011), *aff'd*, 475 F. App'x 113 (9th Cir. 2012) ..........13

*Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504 (1992) ................................................8

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ......................................................15

*Corcoran v. CVS Health Corp.*, No. 15-cv-3504YGR, --- F. Supp. 3d ----,
2016 WL 948880 (N.D. Cal. Mar. 14, 2016)......................................................10

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)................................................13

*Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003) ........................19

*Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147 (N.D. Cal. 2011) ..............................7

*Delarosa v. Boiron, Inc.*, No. SACV 10-1569-JST, 2012 WL 8716658 (C.D. Cal.
Dec. 28, 2012)....................................................................................................15

*Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075 (N.D. Cal. 2014) ........................19

*Frenzel v. AliphCom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014)....................................16, 17

*Gentges v. Trend Micro Inc.*, No. C11-5574SBA, 2012 WL 2792442 (N.D. Cal.
July 9, 2012)........................................................................................................20

MOTION TO DISMISS, NOTICE OF MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

*Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) .........................................................................................................................12

*Hartman v. Gilead Scis., Inc.*, 536 F.3d 1049 (9th Cir. 2008)............................................10

*Henderson v. Gruma Corp.*, No. CV 10-04173AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011)................................................................................................15

*Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917 (N.D. Cal. 2014) .....................................13

*Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc)....................17

*Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033 (N.D. Cal. 2013)..........................14

*Jurgensen v. Felix Storch, Inc.*, No. 12 Civ. 1201(KBF), 2012 WL 2354247 (S.D.N.Y. June 14, 2012) .................................................................................................19

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ........................................7, 10

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679 (2d Cir. 2012) ....................................................................................................................19

*Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492BLF, 2014 WL 6657809 (N.D. Cal. Nov. 21, 2014)..........................................................................................14, 17

*Lewis v. Casey*, 518 U.S. 343 (1996)........................................................................................17

*Lilly v. Jamba Juice Co.*, No. 13-cv-02887-JST, 2015 WL 1248027 (N.D. Cal. March 18, 2015) ...............................................................................................................15

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).....................................................................13

*Luman v. Theismann*, No. 14-15385, 2016 WL 1393432 (9th Cir. Apr. 8, 2016)...................15, 16

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) .............................................10

*McKinnis v. Kellogg USA*, No. CV07-2611ABC, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ...............................................................................................................6, 12

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) ................13

*Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104 (D.D.C. 2006), *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir. 2007)...................................................................................8

*Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc.*, 913 F. Supp. 2d 780 (N.D. Cal. 2012), *aff'd in part, rev'd in part*, 618 F. App'x 304 (9th Cir. 2015)..............17

*Mosely v. Vitalize Labs, LLC*, Nos. 13 CV 2470 (RJD)(RLM), 14 CV 4474 (RJD)(RLM), 2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015).....................................20

*Perez v. Nidek Co., Ltd.*, 711 F.3d 1109 (9th Cir. 2013) .....................................................16

*Rahman v. Mott's LLP*, No. CV-3482 SI, 2014 WL 325241 (N.D. Cal. Jan. 29, 2014) .................................................................................................................. 16

*Raines v. Byrd*, 521 U.S. 811 (1997) .................................................................... 15

*Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) ...................................................... 8

*Surzyn v. Diamond Foods, Inc.*, No. C14–0136SBA, 2014 WL 2212216 (N.D. Cal. May 28, 2014) ............................................................................................. 11

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) (per curiam) .......................... 7

*Szymczak v. Nissan N. Am., Inc.*, No. 10CV7493 (VB), 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ................................................................................ 20

*Thomas v. Costco Wholesale Corp.*, No. 5:12-CV-02908EJD, 2013 WL 1435292 (N.D. Cal. Apr. 9, 2013) ................................................................................. 11

*Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) .................. 12

*Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) .............................................................................. 20

*Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013) ......... 13, 14

### STATE CASES

*Credit All. Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110 (N.Y. 1985) ............. 18

*Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002) ...................... 20

*High Tides, LLC v. DeMichele*, 931 N.Y.S.2d 377 (2d Dep't 2011) ....................... 18

*J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585 (N.Y. 2007) ...................... 18

*Kimmell v. Schaefer*, 675 N.E.2d 450 (N.Y. 1996) ............................................... 18

*Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104 (N.Y. 2011) ................... 18

*Norwest Mort., Inc. v. Sup. Ct.*, 85 Cal. Rptr. 2d 18 (Ct. App. 1999) ................ 19, 20

*Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 39 N.E.2d 91 (N.Y. 1989) .................................................................................................... 18

*Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 605 N.E.2d 318 (N.Y. 1992) .................................................................................. 18

*Wilson v. Century 21 Great W. Realty*, 18 Cal. Rptr. 2d 779 (Ct. App. 1993) ......... 17

MOTION TO DISMISS, NOTICE OF MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

# OTHER AUTHORITIES

21 C.F.R. § 100.100 ............................................................................................9, 11, 14, 15

21 C.F.R. § 101.9(b)(8) .................................................................................................6, 12

21 U.S.C. §§ 343 ........................................................................................................6, 8, 12

21 U.S.C. § 343-1(a)(3) ........................................................................................................8

60A N.Y. Jur. *Fraud and Deceit* § 143 (West 2016)........................................................19

Cal. Civ. Code § 1750–1784 ................................................................................................1

Cal. Bus. & Prof. Code § 17200–17209 ..............................................................................1

Cal. Bus. & Prof. Code § 17500–17509 ..............................................................................1

Food, Drug, and Cosmetics Act, 21 USC §§ 301 *et seq.* ...................................................8

Fed. R. Civ. P. 9(b) ............................................................................... vii, 7, 10, 11, 18

Fed. R. Civ. P. 12(b)(1)................................................................................................... vii

Fed. R. Civ. P. 12(b)(6) ............................................................................................... vii, 7

*Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957
   (Jan. 6, 1993).............................................................................................................8, 9, 12

*Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64,123
   (Dec. 6, 1993) .................................................................................................. 9, 15

N.Y. Gen. Bus. Law § 349 ....................................................................................1, 19, 20

U.S. Const., Art. III...............................................................................................15, 16, 17

MOTION TO DISMISS, NOTICE OF MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1

## NOTICE OF **MOTION** AND MOTION TO DISMISS

2      PLEASE TAKE NOTICE THAT on October 18, 2016, at 2:00 p.m., or as soon thereafter

3 as the matter may be heard, in the United States District Court for the Northern District of

4 California, Oakland Division, in Courtroom 1, Fourth Floor, 1301 Clay Street, Oakland,

5 California, before the Hon. Yvonne Gonzalez Rogers, Defendant Mars, Incorporated ("Mars")

6 will move to dismiss this action with prejudice pursuant to Federal Rules of Civil Procedure 9(b),

7 12(b)(1), and 12(b)(6).

8      Mars's Motion rests on the following grounds, which are set forth in detail in the attached

9 Memorandum of Points and Authorities:

10      1.   The Complaint fails to state a claim because (a) the Food and Drug Administration

11           has issued regulations governing slack-fill—which preempt state law claims—that

12           provide that slack-fill is only misleading if it is nonfunctional and (b) the

13           Complaint does not sufficiently allege that the slack-fill in Uncle Ben's® rice

14           products is nonfunctional;

15      2.   Plaintiffs lack standing to bring claims based on products they did not purchase;

16      3.   Plaintiffs lack standing to seek injunctive relief;

17      4.   Plaintiffs fail to state a claim for negligent misrepresentation under California or

18           New York law; and

19      5.   Plaintiffs' claims seeking to apply California and New York statutes

20           extraterritorially must be dismissed.

21      The Motion is based on this Notice, the supporting Memorandum of Points and

22 Authorities, the accompanying Request for Judicial Notice and exhibit thereto, the Declaration of

23 Eli S. Schlam in Support of Mars's Request for Judicial Notice, Plaintiffs' Complaint, any reply

24 brief filed hereafter, the oral argument of the parties, and the complete files and records for this

25 action.

26

27

28

## STATEMENT OF ISSUES TO BE DECIDED

1.  Do Plaintiffs state a claim against 43 different varieties of Uncle Ben's® rice by making naked, conclusory, and implausible assertions that all containers of Uncle Ben's® rice products contain empty space that serve no functional purpose?

2.  Under Article III of the United States Constitution, do Plaintiffs have standing to bring claims with respect to 40 different varieties of Uncle Ben's® rice products they never purchased?

3.  Do Plaintiffs, who have alleged that they will never again purchase Uncle Ben's® rice, have standing to seek prospective injunctive relief?

4.  Have Plaintiffs stated a claim for negligent misrepresentation under California and New York law where there is no affirmative misrepresentation and no special or privity-like relationship?

5.  Can Plaintiffs sue an out-of-state company under California's and New York's consumer protection statutes on behalf of out-of-state members of a nationwide putative class who made out-of-state purchases of Uncle Ben's® rice products?

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

3

4

5

6

7

8

9

10

11

This suit boils down to Plaintiffs' claim that each and every container of 43 different varieties of Uncle Ben's® rice sold throughout the United States is misbranded, because when they purchased Uncle Ben's® rice, they did not "receive a full container of product." Complaint ("Compl.") ¶ 5. The Complaint summarily alleges that Mars, Incorporated ("Mars") intentionally incorporated empty space or "slack-fill" into every container of Uncle Ben's® rice products sold throughout the United States "to mislead . . . consumers[.]" *Id.* ¶ 22. With that factually-unsupported assertion, Plaintiffs hope to represent a putative class consisting of "[a]ll persons in the United States who made retail purchases" of every variety of Uncle Ben's® rice over the past four years. *Id.* ¶ 40.[1]

12

13

14

15

16

17

18

19

20

21

But Plaintiffs' Complaint is replete with conclusory and implausible allegations that are insufficient to state a claim or to burden Mars with expense of defending against a multi-claim nationwide putative class action. It fails to address in any meaningful way the regulations that expressly permit slack-fill and with which Mars fully complies. It improperly attempts to leverage Plaintiffs' purchase of a handful of Uncle Ben's® rice products to challenge 43 different varieties of Uncle Ben's® rice. It seeks injunctive relief despite admitting that Plaintiffs will never purchase another Uncle Ben's® rice product. And it tries to improve their chances of maintaining a putative class action by invoking inapplicable common law remedies and wrongly applying the consumer protection laws of California and New York to out-of-state purchases of Uncle Ben's® rice. Such an improper and incomplete pleading should be dismissed with prejudice.

22

### BACKGROUND

23

24

25

Mars is a leading food, beverage, and confectionary company. Among its many iconic brands are M&M'S®, SNICKERS®, 3 MUSKETEERS®, MILKY WAY®, and Uncle Ben's® rice. This case involves Uncle Ben's® rice. Uncle Ben's® rice has been marketed and sold since 1946

26

27

28

---

[1] Plaintiffs purport to assert claims under California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750–1784 ("CLRA") (Count I); all three prongs of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200–17209 ("UCL") (Count II); the False Advertising Law, Cal. Bus. & Prof. Code § 17500–17509 ("FAL") (Count III); New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349 (Count IV); and common law negligent misrepresentation (Count V).

and can now be found in homes, restaurants, and commercial kitchens in more than 100 countries worldwide. *See* Compl. ¶ 4 ("Defendant's Rice Products are made from 'a tradition of quality and variety since 1946.'"); *see id.* ¶ 3 ("Defendant's Rice Products are sold throughout the world, including the U.S., online and at various stores, including most grocery stores."). Uncle Ben's® rice "[p]roducts are among the top selling rice products in the world." *Id.* ¶ 14. This is due in part to Uncle Ben's® large number of "varying types and flavors of rice." *Id.* ¶ 19.

### A.    The 43 Different Varieties of Uncle Ben's® Rice.

There are 43 different varieties of Uncle Ben's® rice. *See* Mars's Request for Judicial Notice ("RJN") Ex. A. These varieties can be loosely grouped into six broad categories, which "include: (1) White Rice, (2) [Whole Grain] Brown Rice, (3) Flavored Grains (i.e., flavored rice), (4) Country Inn[®] Rice, (5) Ready Rice[®], [a]nd (6) Dry Specialty Rice." *Id.* ¶ 19. Each category includes numerous rice products as follows:

| CATEGORY | UNCLE BEN'S® RICE PRODUCTS |
|---|---|
| White Rice | UNCLE BEN'S® Boil-in-Bag Rice<br>UNCLE BEN'S® Instant Rice<br>UNCLE BEN'S® ORIGINAL CONVERTED® Brand Rice |
| Whole Grain Brown Rice | UNCLE BEN'S® Instant Brown Rice<br>UNCLE BEN'S® Whole Grain Brown Rice<br>UNCLE BEN'S® Boil-in-Bag Whole Grain Brown |
| Flavored Grains | UNCLE BEN'S® 5 Grain Medley, Quinoa Pilaf<br>UNCLE BEN'S® Brown Rice Medley, Roasted Garlic & Herb<br>UNCLE BEN'S® Brown Rice & Quinoa, Roasted Red Pepper<br>UNCLE BEN'S® Long Grain & Wild Rice Fast Cook Recipe<br>UNCLE BEN'S® Long Grain & Wild Rice, Original Recipe<br>UNCLE BEN'S® Basmati Medley, Savory Herb |
| Country Inn® Rice | UNCLE BEN'S® COUNTRY INN® Chicken & Broccoli Rice<br>UNCLE BEN'S® COUNTRY INN® Broccoli Rice Au Gratin<br>UNCLE BEN'S® COUNTRY INN® Chicken & Vegetable Rice<br>UNCLE BEN'S® COUNTRY INN® Chicken & Wild Rice<br>UNCLE BEN'S® COUNTRY INN® Chicken Flavored Rice<br>UNCLE BEN'S® COUNTRY INN® Rice Pilaf |
| Ready Rice® | UNCLE BEN'S® READY RICE® Basmati<br>UNCLE BEN'S® READY RICE® Beef Flavor<br>UNCLE BEN'S® READY RICE® Pinto Beans & Rice<br>UNCLE BEN'S® READY RICE® Brown, Red & Black Rice<br>UNCLE BEN'S® READY RICE® Brown Basmati<br>UNCLE BEN'S® READY RICE® Butter & Garlic Flavored<br>UNCLE BEN'S® READY RICE® Chicken Flavored Whole Grain Brown |

| CATEGORY | UNCLE BEN'S® RICE PRODUCTS |
|---|---|
| Ready Rice®, cont'd. | UNCLE BEN'S® READY RICE® Creamy Four Cheese Flavored<br>UNCLE BEN'S® READY RICE® Garden Vegetable<br>UNCLE BEN'S® READY RICE® Jasmine<br>UNCLE BEN'S® READY RICE® Long Grain & Wild<br>UNCLE BEN'S® READY RICE® Original Long Grain<br>UNCLE BEN'S® READY RICE® Red Beans and Rice<br>UNCLE BEN'S® READY RICE® Rice Pilaf<br>UNCLE BEN'S® READY RICE® Roasted Chicken Flavored<br>UNCLE BEN'S® READY RICE® Spanish Style<br>UNCLE BEN'S® READY RICE® Teriyaki Style<br>UNCLE BEN'S® READY RICE® Whole Grain Brown<br>UNCLE BEN'S® WHOLE GRAIN MEDLEY™ Brown & Wild Rice<br>UNCLE BEN'S® READY WHOLE GRAIN MEDLEY™ Chicken Medley<br>UNCLE BEN'S® WHOLE GRAIN MEDLEY™ Santa Fe<br>UNCLE BEN'S® WHOLE GRAIN MEDLEY™ Brown Rice and Quinoa<br>UNCLE BEN'S® WHOLE GRAIN MEDLEY™ Vegetable Harvest |
| Dry Specialty Rice | UNCLE BEN'S® Basmati Rice<br>UNCLE BEN'S® Jasmine Rice |

*See* RJN Ex. A.

These 43 varieties of Uncle Ben's® rice vary substantially. Uncle Ben's® rice variously contain parboiled rice, dry rice, and both water and parboiled rice. *See* RJN Ex. A at 5, 43, 87. The type of rice meaningfully varies, including Brown Long Grain Rice, White Long Grain Rice, Basmati Rice (white and brown), Red Rice, Jasmine Rice, and Wild Rice. *See* RJN Ex. A. Uncle Ben's® rice varieties are sold in different forms, including: (1) in their classic form, such as Uncle Ben's® Ready Rice® Brown Basmati, *see id.* at 49; (2) in flavorful medleys, such as Uncle Ben's® 5 Grain Medley, Quinoa Pilaf, which combines brown rice, whole grain red rice, couscous, and two varieties of quinoa, *see id.* at 15; (3) seasoned with sauces and vegetables, such as Uncle Ben's® Country Inn® Broccoli Rice Au Gratin, *see id.* at 30; and (4) seasoned with spices, herbs, and other natural flavors, such as Uncle Ben's® Long Grain & Wild Rice, Original Recipe, which has a unique blend of wild and long grain rice and 23 natural herbs and seasonings, *see id.* at 23–25. The following examples are illustrative:

 

*See* RJN Ex. A at 28, 45.

**B.      The Diverse Packaging of the 43 Varieties of Uncle Ben's® Rice.**

With different ingredients and mixtures come different packaging and fill requirements. *First*, the sizes of the containers vary. Uncle Ben's® Original Converted® Brand Rice is packaged in both 1- and 2-pound cardboard boxes and 5-, 10-, and 12-pound transparent plastic bags. *See* RJN Ex. A at 7, 91. Uncle Ben's® Whole Grain Brown Rice is available in both 1-pound cardboard boxes and 2- and 5-pound transparent plastic bags. *See id.* at 11, 91. Uncle Ben's® instant rice is available in 14-ounce and 28-ounce containers. *See id.* at 5. Uncle Ben's® Ready Rice® is sold in 8.5-ounce containers. *See id.* at 49, 53. Uncle Ben's® Boil-In-Bag Rice is sold in 15.8-ounce containers. *See id.* at 1. And Country Inn® Rice and Flavored Grains are packaged in 5-ounce containers and 6.0- to 6.2-ounce containers respectively. *See id.* at 17, 36; *see also* Compl. ¶25 (including a photo of Uncle Ben's® Long Grain & Wild Rice container); *see id.* ¶ 24 ("Defendant's Rice Products are sold in varying non-transparent containers that contain different net weights.").

*Second*, the contents of the packaging vary. The container for Uncle Ben's® Boil-in-Bag brands includes pre-measured bags for quick, easy cooking with minimal cleanup. *See* RJN Ex. A at 1–3. The containers for Uncle Ben's® flavored-grain brands include rice, couscous, quinoa, and pre-measured seasoning packets. *See id.* at 15–27. The containers for Uncle Ben's® Country Inn® Rice include rice, orzo pasta, and pre-measured packets for sauces and seasonings. *See id.* at 28–

40. And containers for Uncle Ben's® Ready Rice® contain rice and ingredients such as pinto beans, peas, carrots, corn, red beans, black beans, tomatoes, peppers, cilantro, barley, lentils, and quinoa. *See id.* at 41–86.

*Third*, the types of containers vary. Uncle Ben's® Boil-in-Bag is packaged in plastic bags placed in a 14-ounce cardboard box. *See* RJN Ex. A at 1–3. Uncle Ben's® Original Converted® Brand Rice and Whole Grain Brown Rice are packaged in both cardboard boxes and transparent plastic bags. *See id* at 6–7, 10–11, 91.  Ready Rice® and Dry Specialty Rice, in contrast, are packaged in plastic pouches. *See id* at 41–90.

 

*See* RJN Ex. A at 3, 63.

*Finally*, the functionality of the packaging varies. While all of Uncle Ben's® rice is packaged to protect and preserve its contents, the majority of packaging is designed to perform a specific function. For example, the packaging for Uncle Ben's® Ready Rice® serves as the cooking vessel for the rice and is placed directly in the microwave. *See* RJN Ex. A at 41–86. For Uncle Ben's® "Boil-in-Bag" products, the rice is enclosed in a bag within the cardboard box that can be placed directly in a boiling water. *See id.* at 1–3.

**C.    Plaintiffs' Far-Ranging and Wholly-Conclusory Challenge to the Diverse Packaging of the 43 Varieties of Uncle Ben's® Rice.**

Plaintiff Eric Lankenau-Ray purchased a single container of Uncle Ben's® Long Grain & Wild Rice" from a California grocery store in 2016. *See* Compl. ¶ 12 n.5. His New York counterpart, Plaintiff Carmen Vargas, purchased in 2015 Uncle Ben's® "'Original' and 'Whole

Grain' product from a local grocery store in Stony Point, New York." Compl. ¶ 13 n.6. Plaintiffs do not allege—nor could they—that Uncle Ben's® rice products contained (1) less product than expressly indicated on the front of each container; or (2) fewer servings per container than listed on each product's nutritional label. *See* Compl. ¶ 29 ("[T]he container labels state the amount of Rice Product contained therein[.]"); *see also* 21 U.S.C. § 343(e)(2) (requiring manufacturers to provide "an accurate statement of the quantity of the contents"); 21 C.F.R. § 101.9(b)(8) (requiring manufacturers to calculate servings per container); *see also McKinnis v. Kellogg USA*, No. CV07-2611ABC, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (Nutrition facts "have long been required on food products and are familiar to a reasonable consumer.").

Instead, Plaintiffs claim that when they purchased Uncle Ben's® rice products, they "expected to receive a full container of product." *Id*. ¶ 5. Rather than being full, Plaintiffs allege that the "non-transparent, paper/cardboard containers" had "empty space, or slack-fill." *Id.* ¶ 5. To prove their point, Plaintiffs stick a ruler into container of Uncle Ben's® Long Grain & Wild Rice and Uncle Ben's® Country Inn Rice® Pilaf and conclude that "approximately 50% of the interior of the container is comprised of empty space." *Id.* ¶¶ 25–26. They then summarily conclude that "[t]here is no functional reason for including up to 50% slack-fill in the Rice products." *Id.* ¶¶ 25– 26, 30.

But Plaintiffs do not plead facts regarding how loose-filled rice settles during shipment, how the size of containers is determined, or how containers are filled and sealed. Plaintiffs fail to mention that these containers for Uncle Ben's® Long Grain & Wild Rice and Uncle Ben's® Country Inn Rice® Pilaf must accommodate not only loose-filled rice, but also pre-measured seasoning packets. *See* RJN Ex. A at 23–25 (Uncle Ben's® Long Grain & Wild Rice combines seasoning packet containing a unique blend of 23 herbs and seasonings with a mix of wild and natural long grain rice); *see id.* at 38–40 (Uncle Ben's® Country Inn Rice Pilaf combines long grain rice and orzo pasta with a seasoning packet that contains herbs and seasoning). Plaintiffs ignore governing regulations that expressly permit manufacturers to include empty space in their packaging, claiming only that none of those regulations apply. *See* Compl. ¶ 22 ("None of the above safe-harbor provisions applies to Defendant's Rice Products."). And Plaintiffs fail to

account for the diverse packaging of the 43 varieties of Uncle Ben's® rice, choosing instead to challenge all of Uncle Ben's® rice products. *See* Compl. ¶ 27; *see id.* ¶ 24 ("Each of the containers has significant slack-fill"). Despite these many deficiencies, Plaintiffs purport to bring a multi-count, nationwide putative class action on behalf of all purchasers of Uncle Ben's® 43 varieties of rice products sold in the past four years, as well as two subclasses made up of California and New York purchasers respectively. *Id.* ¶ 40. These far-ranging and wholly-conclusory claims are unfounded and cannot survive a motion to dismiss.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the well-pleaded factual allegations of the complaint permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Moreover, where, as here, all of Plaintiffs' claims sound in fraud, a party must satisfy Rule 9(b)'s heightened pleading standard, which requires the plaintiff to plead the circumstances constituting fraud with particularity. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126 (9th Cir. 2009). Such claims "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); *see also Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011) (applying rule to claims for negligent misrepresentation).

## ARGUMENT

**I.     Plaintiffs Fail To State a Claim (Counts I–V).**

To understand the defects in Plaintiffs' claims, it is necessary to understand the regulations governing slack-fill. In 1990, Congress sought to create uniform national standards

regarding food labeling when it amended the Food, Drug, and Cosmetics Act, 21 U.S.C. §§ 301 *et seq.*, by enacting the Nutrition Labeling and Education Act ("NLEA"). *See* 21 U.S.C. §§ 343, 343-1 ("National uniform nutrition labeling"). Pursuant to the NLEA, Congress charged the United States Food and Drug Administration ("FDA") with promulgating regulations regarding the permissibility of slack-fill. *See* 21 U.S.C. § 343(d). The NLEA also contains broad preemption provisions. *See* 21 U.S.C. § 343-1(a)(3); *see also Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 106–09 (D.D.C. 2006) (noting the breadth of NLEA preemption provisions), *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir. 2007). These provisions expressly preempt any "requirement" that is "not identical to" the labeling requirements created by the FDA, including those for filling containers. *See* 21 U.S.C. §§ 343(d), 343-1(a)(3).

The statute preempts not only state statutes and regulations, but also common-law duties and responsibilities. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005); *see also Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324–325 (2008) ("[E]xcluding common-law duties from the scope of pre-emption would make little sense."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 522 (1992) ("[C]ommon-law damages actions . . . are premised on the existence of a legal duty, and it is difficult to say that such actions do not impose 'requirements or prohibitions.'" (citation omitted)). Therefore, to state a claim that is not preempted by the federal regulations, Plaintiffs must allege sufficient facts to show that Uncle Ben's® rice products fail to comply with the FDA's slack-fill regulations.

### A. Functional vs. Non-Functional Slack-Fill.

The FDA defines slack-fill as "the difference between the actual capacity of a container and the volume of product contained therein." *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957, 2959 (Jan. 6, 1993). FDA regulations do not require, however, that a product's container be filled to its brim. Rather, the FDA recognizes that slack-fill serves functional purposes "and, therefore, can be justified even though some consumers may perceive it to be misleading." *Id.* at 2960. The FDA further recognizes that consumer products "may have large levels of slack-fill" that are justified. *Id.* at 2959 (functional slack-fill levels for cereal products ranged "from 8.6 to 43.1 percent of the container volume."); *id.* at 2960 (functional slack-fill

1  levels for candy bars was "as much as 63.8 percent"); *see Misleading Containers; Nonfunctional*

2  *Slack-Fill*, 58 Fed. Reg. 64,123, 64,135 (Dec. 6, 1993) (recognizing that products may have "a

3  significant amount of [functional] slack-fill"); *id.* (There is "no specific numerical value" that

4  determines whether slack-fill is misleading.).

5       Pursuant to FDA regulations, slack-fill is only "nonfunctional"—and therefore unlawful—

6  when it exists for reasons other than:

7       (1) Protection of the contents of the package;

8       (2) The requirements of the machines used for enclosing the
     contents in such package;

9

     (3) Unavoidable product settling during shipping and handling;

10

11       (4) The need for the package to perform a specific function . . .;

12       (5) The fact that the product consists of a food packaged in a
     reusable container where the container is part of the presentation of
     the food and has value . . . ; or

13

14       (6) Inability to increase level of fill or to further reduce the size of
     the package . . . .

15  21 C.F.R. § 100.100(a)(1)–(6). The FDA has broadly construed regulations that deem slack-fill as

16  functional. For example, "[p]rotection of the contents of the package," 58 Fed. Reg. at 64,136,

17  includes ensuring package strength and stackability, preventing tampering and theft, and

18  accommodating "packaging to extend shelf-life." 58 Fed. Reg. at 2961. "The requirements of the

19  machines used for enclosing the contents in such package," 58 Fed. Reg. at 64,136, broadly

20  includes filling machines, sealing machines, and "all equipment involved when product and

21  package come together," *id.* at 64,132. The FDA also recognizes that:

22       [P]roduct settling is a normal, unavoidable process for many types of food (e.g.,
     cereal and potato chips). Thus, [permissible] slack-fill that results from product

23       settling is a function of the physical properties of the product (e.g., the shape of the
     pieces of food), and of the way in which the product is filled into the container

24       (e.g., loosely packed).

25

26  58 Fed. Reg. at 2961. The FDA has further determined "[t]he need for the package to perform a

27  specific function," includes to provide convenience, accommodate premeasured packets, and "to

28  play a role in the preparation or consumption of a food." 58 Fed. Reg. at 64,134, 64,136.

1

2    **B.**      **Plaintiffs Do Not Adequately Plead Violations of Slack-Fill Regulations.**

3           1.      Plaintiffs' Allegations Are Impermissibly Conclusory.

4    Although Plaintiffs cite to the FDA's slack-fill regulations, they do no more than tender

5    "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (alternation and

6    internal quotation marks omitted), that the empty space in containers of Uncle Ben's® rice

7    products has no functionality. *See* Compl. ¶¶ 30, 38; *see id.* ¶ 22 ("None of the above safe-harbor

8    provisions applies to Defendant's Rice Products."). To make matters worse, Plaintiffs attribute—

9    without any factual basis—the empty space in Uncle Ben's® rice products as really just a scheme

10   "to mislead the consumers, including Plaintiffs and members of the Class." *Id.*

11          Such conclusory and inflammatory allegations are insufficient to subject a manufacturer to

12   an expensive, extended nationwide putative class action. *See McGlinchy v. Shell Chem. Co.*, 845

13   F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a

14   motion to dismiss for failure to state a claim."); *see also Hartman v. Gilead Scis., Inc.*, 536 F.3d

15   1049, 1055 (9th Cir. 2008) (The court does not accept as true "allegations that are merely

16   conclusory, unwarranted deductions of fact, or unreasonable inferences." (internal quotation

17   marks omitted)); *Corcoran v. CVS Health Corp.*, No. 15-cv-3504YGR, --- F. Supp. 3d ----, 2016

18   WL 948880, at *8 (N.D. Cal. Mar. 14, 2016) (mere possibilities are not enough).

19          Were it otherwise, all that would be necessary to hold a manufacturer hostage to a putative

20   class action sounding in fraud would be (1) a product sold in a non-see-through container; (2) a

21   ruler placed into a product that is not filled completely full (i.e., chips, rice, cereal, pasta, ice

22   cream, crackers, etc.); and (3) a conclusory allegation that the empty space serves no useful

23   function. That is the precise outcome the pleading rules are intended to prevent. *See, e.g., Kearns*,

24   567 F.3d at 1125 (Rule 9(b) serves multiple purposes including "provid[ing] defendants with

25   adequate notice to allow them to defend the charge and deter[ing] plaintiffs from the filing of

26   complaints 'as a pretext for the discovery of unknown wrongs' . . . [and] 'prohibit[ing] plaintiff[s]

27   from unilaterally imposing upon the court, the parties and society enormous social and economic

28   costs.'" (fifth alternation in original) (citation omitted)).

1   The insufficiency of Plaintiffs' claims is made worse by Plaintiffs' attempt to extend their

2   conclusory allegations to the diverse packaging and fill requirements for all 43 varieties of Uncle

3   Ben's® rice. Yet Eric Lankenau-Ray purchased a single package of Uncle Ben's® Long Grain &

4   Wild Rice, which is sold in 6-ounce cardboard container. *See* Compl. ¶ 12 n.5; *see also* RJN Ex.

5   A at 23. Carmen Vargas, in turn, purchased Uncle Ben's® Original Converted® Brand Rice and

6   Whole Grain Brown Rice without specifying if she purchased the rice in 1- or 2-pound boxes or

7   in 5-, 10- or 12-pound bags. *See* Compl. ¶ 13 n.6; RJN Ex. A at 6–7, 10–11. That is insufficient.

8   *See also Surzyn v. Diamond Foods, Inc.*, No. C14–0136SBA, 2014 WL 2212216, at *5 (N.D. Cal.

9   May 28, 2014) ("Defendant is entitled to fair notice of the particular product Plaintiff

10  purchased."); *Thomas v. Costco Wholesale Corp.*, No. 5:12-CV-02908EJD, 2013 WL 1435292, at

11  *6–7 (N.D. Cal. Apr. 9, 2013) (dismissing complaint under Rule 9(b) because it "fail[ed] to

12  unambiguously specify the particular products" at issue). Plaintiffs then attempt to leverage these

13  limited purchases of three Uncle Ben's® rice products to attack all 43 varieties of Uncle Ben's®

14  rice. *See* Compl. ¶¶ 19, 24, 27.

15      The sizes, contents, types, and functionality of the containers, however, vary markedly.

16  *See supra* at pp. 2–5. Unsurprisingly, the reasons and amount of slack-fill in Uncle Ben's® rice

17  products, as well as the applicability of the slack-fill regulations, also varies. For example, slack-

18  fill regulations do not even apply to transparent plastic bags containing of Uncle Ben's® rice. *See*

19  21 C.F.R. § 100.100(a) (applying only to containers that do not allow consumers to fully view

20  their contents). Plaintiffs cannot fairly lump all 43 varieties of Uncle Ben's® rice together and

21  hope that is sufficient to burden Mars with the expense of defending against a far-reaching, multi-

22  claim, nationwide putative class action.

23              **2.      Plaintiffs' Conclusory Allegations Are Facially Implausible.**

24      "To survive a motion to dismiss, a complaint must . . . state a claim to relief that is

25  plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "Determining

26  whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires

27  the . . . court to draw on its judicial experience and common sense." *Id.* at 679. Here, Plaintiffs'

28  claim that the only reason empty space exists in Uncle Ben's® rice products is "to mislead the

1    consumers, including Plaintiffs and members of the Class." Compl. ¶¶ 22, 38, 72. That claim is

2    facially implausible.

3        *First*, Plaintiffs do not—and cannot—dispute that each container of Uncle Ben's® rice

4    conspicuously and accurately discloses to consumers both the exact amount of product contained

5    therein and the number of Servings Per Container. *See id.* ¶ 29 ("[T]he container labels state the

6    amount of Rice Product contained therein[.]"); *see also* 21 U.S.C. § 343(e)(2) (requiring

7    manufacturers to provide "an accurate statement of the quantity of the contents"); 21 C.F.R.

8    § 101.9(b)(8) (requiring manufacturers to calculate servings per container); *see also Viggiano v.*

9    *Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 892 n.38 (C.D. Cal. 2013) ("In cases where a product's

10   front label is accurate and consistent with the statement of ingredients, courts routinely hold that

11   no reasonable consumer could be misled by the label, because a review of the statement of

12   ingredients makes the composition of the [product] clear."); *Gitson v. Trader Joe's Co.*, No. 13-

13   cv-01333-WHO, 2013 WL 5513711, at *7 (N.D. Cal. Oct. 4, 2013) (holding that reasonable

14   consumer would not be deceived into believing soy milk was dairy when label said it was not);

15   *McKinnis v. Kellogg USA*, No. CV07-2611ABC, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19,

16   2007) (Nutrition facts "have long been required on food products and are familiar to a reasonable

17   consumer.").

18       *Second*, Plaintiffs' theory of fraud makes no sense. Even the FDA acknowledges that "if

19   consumers object to the level of slack-fill in a given package, they can easily identify that product

20   by brand name and refrain from purchasing that particular product in the future." 58 Fed. Reg. at

21   2963; *see id.* at 2964 ("The benefit to consumers from changes in the regulations addressing

22   slack-fill should therefore be quite modest."). Plaintiff cannot plausibly suggest Mars would

23   intentionally and unnecessarily create customer dissatisfaction, damage brand reputation, and lose

24   future sales by intentionally deceiving consumers as to the amount being sold. It is against Mars's

25   financial interests to alienate consumers. *See Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that

26   states a plausible claim for relief survives a motion to dismiss.").

27

28

## II. Plaintiffs Lack Standing To Sue for 40 Varieties of Uncle Ben's® Rice They Did Not Purchase (Counts I–V).

As an initial matter, Plaintiffs fail to satisfy basic constitutional standing requirements because they have sustained no "injury in fact" as a result of products they did not purchase. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Because Plaintiffs were not injured by products they did not purchase, the Court should dismiss Plaintiffs' claims based on such products. *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (unless plaintiffs actually purchase a product, they cannot prove they "suffered any injury or lost money or property with respect to those products"), *aff'd*, 475 F. App'x 113 (9th Cir. 2012).

If this Court follows the alternative approach, focusing on whether there is "sufficient similarity between the products purchased and not purchased," *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1005 (N.D. Cal. 2012), Plaintiffs still lack standing. Under the "substantial similarity" test, courts traditionally look at factors including: whether the products are "of the same kind," "comprised of largely the same ingredients," and "bear[] the same alleged mislabeling." *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1141 (N.D. Cal. 2013). Plaintiffs can bring claims about products they did not purchase only if "the crux of Plaintiff[s]' case" is "common misrepresentations" across all the products. *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 892 (N.D. Cal. 2012); *see also Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 934 (N.D. Cal. 2014).

This case differs from the typical mislabeling case where a plaintiff alleges a common affirmative statement (e.g., "All Natural") across a number of different products, which courts have found sufficient to establish a "sufficient similarity." *See, e.g.*, *Anderson v. Jamba Juice*, 888 F. Supp. 2d at 1006; *see also Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 871–72 (N.D. Cal. 2012) (rejecting standing for different chocolate products and noting that "[u]nlike *Astiana* and *Jamba Juice*, this is not the type of case where similar products or similar misrepresentations injured [plaintiff] in the same way as the unnamed plaintiffs").

Here, there is no affirmative statement; rather, "the crux of Plaintiff[s]' case" is that the Uncle Ben's® rice products contain nonfunctional slack-fill. While Plaintiffs allege that all of Uncle Ben's® rice products contain some slack-fill, Compl. ¶ 27, the relevant question here is whether the slack-fill is functional. For each variety of Uncle Ben's® rice product, Plaintiffs will need to show that the slack-fill cannot be explained by any of the many bases for finding functionality. *See* 21 C.F.R. § 100.100(a)(1)–(6). The answer to that question depends on factors that will differ across the various Uncle Ben's® rice products, including whether inevitable settling exists, whether the space is necessary for the manufacturing process, the need of the packaging to perform a specific function, or protection of the contents. Analyzing those factors will, in turn, require an analysis of the different manufacturing processes, filling processes, packaging, and types of rice in each of the 43 different kinds of Uncle Ben's® rice products.

The Complaint contains no allegations that the manufacturing, filling, packaging, and type of rice for all Uncle Ben's® rice products are "substantially similar." This absence is fatal to Plaintiffs' standing to assert claims for unpurchased products, because without this information, the "Court cannot determine whether the [u]npurchased [p]roducts are substantially similar to the [p]urchased [p]roducts for Article III purposes." *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492BLF, 2014 WL 6657809, at *3–4 (N.D. Cal. Nov. 21, 2014) (dismissing claims for unpurchased products where plaintiff did not provide "any details regarding the products' ingredients, labeling, or packaging"); *see also Wilson*, 961 F. Supp. 2d at 1141–42 (dismissing claims for unpurchased product where plaintiff took "no time to explain how each of the [unpurchased] [p]roducts are actionably mislabeled" and noting that "[t]he Court will not assume that each of these subtly different [p]roducts is like all the others"); *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1047 (N.D. Cal. 2013) (finding allegations of "'similar packaging' insufficient to meet the standing requirement").

Nor can Plaintiffs make such allegations. As just one example, the Complaint appears to cover both "boil in a bag" products, as well as products in which the rice is placed directly in the box. *See supra* pp. 5–6; *see also* RJN Ex. A. "Boil in a bag" products fall into the category of the "need for the package to perform a specific function," *see* 21 C.F.R. § 100.100(a)(4), while

1    arguments for other products may differ. The amount of "product settling," *see id.* at

2    § 100.100(a)(3), may vary between the products because, as the FDA has found, "many factors

3    influence the amount of settling in a product," 58 Fed. Reg. 64,123, 64,127. Here, the amount of

4    settling depends on the type and mixture of the rice and other ingredients. *See id.* (identifying

5    "particle size and shape, product density, and product fragility" as factors affecting settling). The

6    different size containers[2] and the existence of a seasoning pouch in some of the Uncle Ben's® rice

7    products, *see supra* p. 4; *see also* RJN Ex. A, are other variables that affect the manufacturing and

8    filling process. *See* 21 C.F.R. § 100.100(a)(2). These are just some of the differences between the

9    various Uncle Ben's® products. Because mislabeling in the context of slack-fill is a question of

10   functionality, the substantial differences between the products mean that there is no "common

11   misrepresentation" across all Uncle Ben's® rice products.

12        The Court should dismiss all of the claims asserted by Plaintiffs to the extent they are

13   based on products they did not purchase.

14   **III.    Plaintiffs Lack Standing To Request Injunctive Relief (Counts I–V).**

15        Article III standing to seek injunctive relief requires that there is a "real or immediate

16   threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111

17   (1983). Prior to the Ninth Circuit's recent decision in *Luman v. Theismann*, No. 14-15385, --- F.

18   App'x ----, 2016 WL 1393432 (9th Cir. Apr. 8, 2016), some courts in this Circuit allowed

19   plaintiffs to seek injunctive relief without alleging an intent to purchase the product in the future.

20   *See, e.g.*, *Lilly v. Jamba Juice Co.*, No. 13-cv-02887-JST, 2015 WL 1248027 (N.D. Cal. March

21   18, 2015).[3] However, the Ninth Circuit addressed this issue in *Luman* and made clear that in a

---

22   [2] The differences are not just between different types of rice products; one type of rice product
23   can be sold in different size containers. For example, in the White Rice category, Original Rice
     comes in 1-pound and 2-pound boxes, and 5-pound, 10-pound, and 12-pound bags, and Instant
24   Rice is available in 14-ounce and 28-ounce boxes. RJN Ex. A at 4–7.

25   [3] These courts, *inter alia*, carved out a public policy exception to the requirements of Article III
     standing for consumer protection claims. *See, e.g.*, *Henderson v. Gruma Corp.*, No. CV 10-
26   04173AHM, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011). Other courts recognized that
     such a carve out "does not square with Article III's mandate." *Delarosa v. Boiron, Inc.*, No.
27   SACV 10-1569-JST, 2012 WL 8716658, at *5 (C.D. Cal. Dec. 28, 2012). After all, the
     irreducible requirements of Article III standing do not change merely because plaintiffs invoke
28   state consumer protection statutes. *See, e.g., Raines v. Byrd*, 521 U.S. 811, 820 n. 3 (1997)
     ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue

consumer protection case such as this, a plaintiff must allege an intent to purchase the product in the future in order to meet this requirement of Article III standing:

> To maintain standing, Plaintiffs must show a sufficient likelihood that they will be injured . . . again in a similar way and that the future injury can be redressed by injunctive relief. Because Plaintiffs do not allege that they intend to purchase [the product] in the future, they cannot demonstrate a likelihood of future injury.

*Luman*, 2016 WL 1393432, at *2 (citation omitted). *Luman* confirmed previous rulings by the Ninth Circuit and the Northern District that a future intent to purchase is a *sin qua non* for standing to seek injunctive relief. *See, e.g.*, *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1114 (9th Cir. 2013) (no standing for injunctive relief because "Perez does not allege that he intends to have further hyperopic surgery"); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1015 (N.D. Cal. 2014) ("[T]o demonstrate standing in a consumer protection class action . . . the named plaintiff 'must allege that he intends to purchase the produc[t] at issue in the future.'" (third alteration in original) (quoting *Rahman v. Mott's LLP*, No. CV-3482 SI, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014))); *Bird v. First Alert, In*c., No. C 14-3585 PJH, 2014 WL 7248734, at *5 (N.D. Cal. Dec. 19, 2014) ("A plaintiff who has no intention of purchasing a product in the future has no standing to seek prospective injunctive relief.").

Plaintiffs have not pled that they intend to purchase Uncle Ben's® products in the future. Indeed, Plaintiffs allege the exact opposite: Had Plaintiffs "known about the slack-fill at the time of the purchase, they would not have bought Defendant's Products." Compl. ¶ 5; *see also id.* ¶¶ 12, 13, 36. Plaintiffs now know about the slack-fill in the products and, per their own allegations, will not purchase them in the future. Without any intent to purchase Uncle Ben's® products in the future, Plaintiffs cannot establish that there is a chance that they will be "wronged again" by the allegedly deceptive slack-fill in the products.

Plaintiffs also cannot manufacture standing by arguing that unnamed class members might purchase Uncle Ben's® rice products in the future. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996)

---

to a plaintiff who would not otherwise have standing."). Moreover, plaintiffs who lack Article III standing to seek injunctive relief may seek such relief in state courts, which are not bound by Article III. There are also various state and federal regulatory agencies that can be solicited to take action on consumers' behalf. To the extent that the public policy exception was ever constitutionally permissible, the Ninth Circuit's holding in *Luman* forecloses standing where the plaintiff has not alleged an intent to purchase the product in the future.

("That a suit may be a class action . . . adds nothing to the question of standing." (internal quotation marks omitted)). "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc). "Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek." *Id.* Rather, the named plaintiffs themselves must satisfy the requirements of Article III standing in order to represent the class. *See Frenzel*, 76 F. Supp. 3d at 1015 ("A plaintiff who is not himself entitled to seek injunctive relief may not represent a class that seeks such relief.").

**IV.     Plaintiffs Cannot Maintain a Claim for Negligent Misrepresentation (Count V).**

Plaintiffs' claim for negligent misrepresentation must be dismissed. While it is unclear whether Plaintiffs assert this claim under California or New York law, under either state's law Plaintiffs have failed to state a claim.

**A.     Plaintiffs Fail To State a Negligent Misrepresentation Claim under California Law.**

"Under California law . . . 'omissions—that is, nondisclosures—cannot give rise to liability for negligent misrepresentation.'" *Leonhart*, 2014 WL 6657809, at *8 (quoting *Mitsui O.S.K. Lines, Ltd. v. SeaMaster Logistics, Inc.*, 913 F. Supp. 2d 780, 789 (N.D. Cal. 2012), *aff'd in part, rev'd in part*, 618 F. App'x 304 (9th Cir. 2015)). Instead, "[n]egligent misrepresentation is a species of fraud or deceit specifically requiring a 'positive assertion' or 'assertion' of fact. An 'implied' assertion or representation is not enough." *Wilson v. Century 21 Great W. Realty*, 18 Cal. Rptr. 2d 779, 783 (Ct. App. 1993). Here, Plaintiffs have not identified any affirmative representation about the Uncle Ben's® rice products that they claim is false. Plaintiffs allege only an omission or failure to disclose that the products contained slack-fill. *See* Compl. ¶ 96 ("Defendant actively *concealed* material facts"; "Defendant made partial representations that are misleading because some other material fact *has not been disclosed*"; "Defendant's *failure to*

*disclose . . .* constitutes material misrepresentations and *materially misleading omissions*" (emphases added)).[4]

### B.   Plaintiffs Fail To State a Negligent Misrepresentation Claim under New York Law.

Plaintiffs' negligent misrepresentation claim also fails under New York law. Negligent misrepresentation, like fraud, is subject to the heightened pleading requirements of Rule 9(b). *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583–84 (2d Cir. 2005) (per curiam). A necessary element of a negligent misrepresentation claim in New York is "the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007)). The required bond must be "so close as to be the functional equivalent of contractual privity." *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 39 N.E.2d 91, 91 (N.Y. 1989); *see also Credit All. Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110, 118 (N.Y. 1985). This privity requirement is necessary to "provide fair and manageable bounds to what otherwise could prove to be limitless liability." *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 605 N.E.2d 318, 320 (N.Y. 1992).

Ordinary arms-length relationships between buyers and sellers are insufficient. *See Kimmell v. Schaefer*, 675 N.E.2d 450, 450–54 (N.Y. 1996); *High Tides, LLC v. DeMichele*, 931 N.Y.S.2d 377, 382–83 (2d Dep't 2011); *see also Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 63–64 (2d Cir. 1988) (special relationship requires "a closer degree of trust and reliance than that of the ordinary buyer and seller." (internal quotation marks omitted)). "Rather, liability for negligent misrepresentation has been imposed only on those persons [such as lawyers and engineers] who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell*, 675 N.E.2d at 454.

---

[4] Indeed, Plaintiffs make no allegations that the affirmative representations about the net weight of the rice or the number of servings is false.

1    Here, Plaintiffs do not allege facts showing privity or a special relationship with Mars.

2    Instead, Plaintiffs allege that they collectively purchased Uncle Ben's® rice products on three

3    occasions. *See* Compl. ¶¶ 12 n.5, 13 n.6. Such allegations do not establish a special relationship.

4    *See Am. Protein Corp.*, 844 F.2d at 63 (buyer-seller relationship is insufficient); *Dall. Aerospace,*

5    *Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) ("[T]he law of negligent

6    misrepresentation requires a closer degree of trust between the parties than that of the ordinary

7    buyer and seller in order to find reliance on such statements justified."); *Landesbank Baden-*

8    *Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 682 (2d Cir. 2012) (same); *Jurgensen*

9    *v. Felix Storch, Inc.*, No. 12 Civ. 1201(KBF), 2012 WL 2354247, at *9 (S.D.N.Y. June 14, 2012)

10   (dismissing negligent misrepresentation claim premised on relationship of purchaser and

11   manufacturer of freezer appliance); 60A N.Y. Jur. *Fraud and Deceit* § 143 (West 2016) ("A

12   special relationship does not exist where the only contact between the defendant and the plaintiff

13   is that the latter, as an unidentified member of the public, read and relied on a deceptive

14   advertisement of the former.").

15   **V.     Plaintiffs Cannot Apply Consumer Protection Laws Extraterritorially (Counts I–IV).**

16   Variations in state consumer protection laws routinely require denial of class certification.

17   Here, Plaintiffs seek to avoid that result by applying California's consumer protection laws and

18   New York's General Business Law Section 349 ("NY GBL") to all Uncle Ben's® rice products

19   purchased by consumers nationwide. *See* Compl. ¶¶ 66, 78, 88.[5] That is improper.

20   **A.     Plaintiffs Cannot Enforce California Laws Outside of California (Counts I, II,**

21   **& III).**

22   Under California state law, there is a presumption against the extraterritorial application of

23   California's consumer protection statutes. *See Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d

24   1075, 1086–87 (N.D. Cal. 2014) ("[T]he ordinary presumption against extraterritorial application

25   of California law applies to UCL, CLRA, and FAL claims . . . ."); *see also Norwest Mort., Inc. v.*

26   *Sup. Ct.*, 85 Cal. Rptr. 2d 18, 23 (Ct. App. 1999) ("We ordinarily presume the Legislature did not

27

28   [5] The Complaint alleges the CLRA count on behalf of both Plaintiffs.  To the extent that Plaintiff Vargas seeks to assert a CLRA claim, it must be dismissed.

19

Case No. 4:16-cv-2660-YGR

1    intend the statutes of this state to have force or operation beyond the boundaries of the state."); *id.*

2    at 23–24 (concluding that, with respect to the UCL, the legislature did not intend the law to apply

3    to claims "of non-California residents injured by conduct occurring beyond California's

4    borders"). "Applying that presumption, state and federal courts have concluded that California's

5    consumer protection statutes do not reach claims of non-California residents arising from conduct

6    occurring entirely outside of California." *Gentges v. Trend Micro Inc.*, No. C11-5574SBA, 2012

7    WL 2792442, at *6 (N.D. Cal. July 9, 2012).

8          **B.      Plaintiffs Cannot Enforce New York Law Outside New York (Count IV).**

9          Plaintiffs seek to assert a claim under New York's General Business Law Section 349 as

10   to all Uncle Ben's® purchases made by consumers nationwide. *See* Compl. ¶¶ 87–93. But by its

11   own terms NY GBL Section 349 does not apply to out-of-state transactions. Rather, it prohibits

12   only "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the

13   furnishing of any service *in this state*." NY GBL § 349(a) (emphasis added). To be actionable

14   "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mut. Life*

15   *Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002).

16         Because NY GBL Section 349 does not apply to out-of-state purchases, Plaintiffs' attempt

17   to apply that statute extraterritorially must fail. *See Mosely v. Vitalize Labs, LLC*, Nos. 13 CV

18   2470 (RJD)(RLM), 14 CV 4474 (RJD)(RLM), 2015 WL 5022635, at *8 (E.D.N.Y. Aug. 24,

19   2015) (dismissing claims under the consumer-protection laws of states where plaintiff did not

20   reside); *Szymczak v. Nissan N. Am., Inc.*, No. 10CV7493 (VB), 2011 WL 7095432, at *12

21   (S.D.N.Y. Dec. 16, 2011) (dismissing New York claims as to plaintiffs who did not purchase

22   automobiles in New York); *Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2014 WL

23   4220824, at *7 (N.D. Cal. Aug. 22, 2014) (dismissing New York claims for plaintiff who "failed

24   to allege any actionable deception he suffered in New York"). Accordingly, Count IV should be

25   dismissed as to Plaintiff Lankenau-Ray and all putative class members who did not purchase an

26   Uncle Ben's® product in New York.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, Mars respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

Dated: August 5, 2016                    Respectfully submitted,

By: *s/Jeffrey E. Faucette*
Mara W. Murphy (State Bar No. 185902)
David A. Forkner (*pro hac vice*)
Eli S. Schlam (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Fax: (202) 434-5029
E-mail: mmurphy@wc.com
E-mail: dforkner@wc.com
E-mail: eschlam@wc.com

Jeffrey E. Faucette (State Bar No. 193066)
SKAGGS FAUCETTE LLP
One Embarcadero Center, Suite 500
San Francisco, CA 94111
Telephone: (415) 315-1669
Facsimile: (415) 433-5994
E-mail: jeff@skaggsfaucette.com

*Attorneys for Defendant Mars, Incorporated*

MOTION TO DISMISS, NOTICE OF MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES